IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>LUIS ALFONSO PEREZ, REFUGIO LOPEZ, NICHOLAS PEREZ-LLAANEZ and JESUS BAUTISTA-INFANTE,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER ON *JAMES* HEARING<br><br><br>Case No. 1:10-CR-124 TS |

I. INTRODUCTION

Evidence was heard on a *James*[1] hearing on May 3, 2011. The Court finds that the government has made the required showing that the statements are admissible as statements of co-conspirators.

II. STANDARD ON *JAMES* HEARING

A *James* hearing, is a proceeding held outside the presence of the jury to determine whether there is a predicate conspiracy for evidence to be admitted as a co-conspirator

---

[1] *United States v. James*, 590 F.2d 575 (5th Cir. 1979).

1

statement pursuant to Fed. R. Evid. 801(d)(2)(E).[2] That Rule defines as "not hearsay" and an "admission by a party opponent" a statement that is "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy."

As the Tenth Circuit explained in United States v. Owens, before admitting evidence under Rule 801(d)(2)(E):

> the Court must determine: (1) by a preponderance of the evidence, a conspiracy existed, (2) the declarant and the defendant were both members of the conspiracy, and (3) the statements were made in the course of and in furtherance of the conspiracy.[3]

> The Tenth Circuit further explained:

> In *Bourjaily v. United States*, the Supreme Court held the district court may consider and rely on the actual coconspirator statements the government seeks to admit to determine whether a predicate conspiracy existed within the meaning of Fed. R. Evid. 801(d)(2)(E). We have repeated that holding time and time again in our decisions. . . . the Supreme Court made it abundantly clear that Fed. R. Evid. 104(a) governs the matter. That rule provides:

>> Preliminary questions concerning . . . the admissibility of evidence shall be determined by the court . . . In making its determination it is not bound by the rules of evidence except those with respect to privileges."

> Thus, although the Supreme Court did not need to reach the issue in *Bourjaily*, the clear message of that decision is that in deciding whether the offering party has satisfied its burden at a *James* hearing, the district court

---

[2] *See United States v. Gonzalez–Montoya*, 161 F.3d 643, 648 (10th Cir. 1998) (expressing preference for using pretrial *James* hearings but also holding that trial courts may "satisfy the prerequisites for admission of co-conspirator statements" by either holding a *James* hearing or by provisionally admitting the statement(s) subject to the eventual laying of the necessary foundation).

[3] *United States v. Owens*, 70 F.3d 1118, 1123-24 (10th Cir. 1995) (discussing *Bourjaily* 483 U.S. 171, 181 (1987)).

2

has the discretion to consider any evidence not subject to privilege, including both the coconspirator statements the government seeks to introduce at trial and any other hearsay evidence, whether or not that evidence would be admissible at trial. . . . We have since held *Bourjaily* requires "at most, there . . . be some independent evidence linking the defendant to the conspiracy." However, such independent evidence may be sufficient even though it is not "substantial."[4]

## III. PROCEDURAL BACKGROUND

Defendant Lopez filed his request for a *James* hearing in which the other three defendants joined. The Court required the government to file a notice identifying the alleged statements with specificity. Shortly before the hearing, Defendant Lopez withdrew his motion for the *James* hearing and has recently entered a plea of guilty. Defendant Perez also withdrew his joinder in the motion.

At the evidentiary hearing, the government was directed to provide Defendants' counsel with certain transcripts and the parties were granted leave to file additional transcripts and seek additional briefing if warranted after their review of the transcripts. The parties have filed their memoranda but no party has filed an additional transcript or requested additional briefing. Therefore, the Court finds that the record on the hearing is complete.

## IV. DISCUSSION

The government presented evidence that its agents observed its confidential informant (CI) meet with an individual regarding purchase of two pounds of methamphetamine. That individual confirmed that the CI had money for the transaction,

---

[4] *Id.*, 70 F.3d at 1123-24 (quoting Bourjaily, 483 U.S. at181 (1987); *United States v. Martinez*, 825 F.2d 1451, 1451-53 (10th Cir. 1987) (additional citations omitted).

and the CI was given the number of a second individual who eventually gave the CI the phone number to contact his boss. The CI contacted the number for the boss and arranged for a purchase to take place on September 9, 2010. On that day, the CI and the boss spoke on the phone several times regarding the transaction. The CI requested that the transaction take place in Ogden, Utah because he was supposedly coming from Montana. The boss stated his runners were reluctant to meet in Ogden. The CI convinced the boss that the transaction should occur at an agreed location in Ogden and the boss stated that next time they would deliver directly to the CI "up there," meaning Montana. While the CI was waiting at the location, the Boss called him, told him they were in the area, and expressed concern that law enforcement officers had been seen. The CI convinced the boss that there was no problem and the Boss said he would send a vehicle to meet with the CI. Shortly after that call, a silver Jaguar vehicle arrived at the CI's location. All four defendants exited the vehicle, approached the CI, shook hands, and began a conversation. Unbeknownst to the Defendants, the encounter was being recorded by the CI and was also observed by two officers sitting between 100 and 150 yards away. The officers were able to listen to part of the encounter, but it was conducted in Spanish and neither officer spoke Spanish. Also, there was static during some of the conversation.

Defendant Bautista-Infante asked the CI if the money was present. Defendants Lopez and Perez-Llaanez told the CI that if the deal went well, there would be future deals, and they would be willing to transport the narcotics. The CI showed the four Defendants a hidden compartment in his car.

Defendant Perez told the CI that they would go across the street to do the deal, and the other three Defendants would go and get a motel room across the street. The officers observed the four Defendants go across the street to the motel's front desk. Defendants Lopez, Perez-Llaanez, and Bautista-Infante then left the hotel, entered the silver car, and returned to the side of the street where they had originally meet the CI, parked and waited. Defendant Perez met with the CI and told him that the methamphetamine was back in the hotel room. Perez and the CI went to the motel. Perez went inside, retrieved the methamphetamine, and, when he returned with it, was arrested. When Perez was apprehended, the other three Defendants walked quickly away from where they were waiting but were eventually apprehended after a short pursuit.

When arrested, Defendant Lopez said six persons were involved, including two in a black car parked near the original meeting location and identified Perez as wearing a green shirt. However, none of the photographs show any of the Defendants in a green shirt. One of the persons in the black car said the black and silver cars belonged to Defendant Bautista-Infante.

When arrested, Bautista-Infante said he was in the area to go to a nearby dance club. When arrested Defendants Perez and Perez-LLaanez were found with keys to the motel room. The room was registered to Perez.

One of the observing officers testified that the CI told him the substance of these statements, including that the narcotics could be transported to Montana. However, at the hearing, the officer could not recall if the word "Montana" was found in the transcripts of the recordings prepared by the government. Neither the boss nor the telephone

intermediaries he used were ever identified or arrested.

About a month after the arrest, the CI met with the observing officers and identified for the officers which Defendant was speaking during the tapes of the encounter.

IV.

The Court finds by a preponderance of the evidence that the government has established for purposes of this *James* hearing that all four Defendants were involved in the conspiracy to distribute the two pounds of methamphetamine. All four defendants drove up to meet with the CI about the prearranged drug buy when their boss said they would. They all four exited the car to meet with the CI. Each Defendant discussed the drug deal with the CI. Perez-Llaanez and Lopez each discussed the possibility of future drug deals. Bautista-Infante asked about the money. Perez discussed picking up the methamphetamine from the motel room, went to the room to retrieve it, and was arrested when he returned with it. When arrested, Perez and Perez-Llaanez had the keys to the room where the methamphetamine was stashed. One of the Defendants indicated that they four, plus two others were involved. While Defendants are correct that there are some inconsistencies in the testimony, those inconsistencies may be brought out during cross examination of the officers and the CI.

The Court finds that the government has established by a preponderance of the evidence that (1) a conspiracy existed amongst the Defendants and the CI to distribute methamphetamine (2) that the CI and defendants Luis Alfonso Perez, Refugio Lopez, Nicholas Perez-Llaanez, and Jesus Bautista-Infante were members of the conspiracy; (3) and that the statements discussed at the *James* hearing were made in the course of and

6

in furtherance of the conspiracy.

Therefore, the government has shown that the statements in furtherance of that conspiracy are admissible as co-conspirator statements under 801(d)(2)(E).

SO ORDERED.

DATED   June 6, 2011.

BY THE COURT:

_____
TED STEWART
United States District Judge